IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DANIEL DEUTSCH,

        Plaintiff,

v.                                        **Case No.: 3:23-cv-00436**

IEC GROUP, INC., d/b/a AMERIBEN,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Daniel Deutsch, filed an action in state court alleging a denial of benefits under his health insurance plan. Defendant, IEC Group, Inc., d/b/a AmeriBen ("AmeriBen"), removed the action to this Court. Pending before the Court is AmeriBen's Renewed Motion to Dismiss Amended Complaint. (ECF No. 16). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that AmeriBen's Renewed Motion to Dismiss, (ECF No. 16), be **DENIED.**

## I.   <u>Relevant History</u>

On May 11, 2023, Deutsch filed a civil complaint in the Magistrate Court of Cabell County, West Virginia against AmeriBen, an alleged agent of Deutsch's health insurance carrier. (ECF No. 1 at 1). Deutsch asserted that he was denied benefits under

his health plan related to care he received in May 2022. (ECF No. 1-1 at 4, 7). Specifically, Deutsch's claim related to bloodwork he had done as part of a routine wellness visit; Deutsch believed that the bloodwork would be covered under his insurance's preventive care benefit, in part due to conversations he had with customer service representatives. (ECF Nos. 1-1 at 18, 13 at 6). Because Deutsch's health plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), a claim for denial of benefits raised a federal question permitting removal jurisdiction, and AmeriBen filed a notice of removal in this Court on June 14, 2023. (ECF No. 1).

On June 21, 2023, AmeriBen filed a Motion to Dismiss, or, in the Alternative, a Motion for a More Definite Statement. (ECF No. 3). AmeriBen argued that Deutsch's complaint failed to state a claim, because Deutsch had failed to exhaust administrative remedies as required by ERISA, his state court complaint lacked sufficient factual allegations, and his complaint requested extracontractual damages[1] which are not recoverable under ERISA. (ECF No. 3). While AmeriBen's motion to dismiss was pending, Deutsch exhausted his administrative remedies in accordance with ERISA. (ECF No. 12 at 9–10). Deutsch had attached several documents to his state court complaint, including the Explanation of Benefits Deutsch received from AmeriBen, AmeriBen's first-level appeal determination letter, and small portions of a customer support chat log referencing Deutsch's previous communications regarding the bloodwork. (ECF No. 1-1). These documents supplied the basic facts of Deutsch's claim. Nevertheless, the actual complaint itself—a form from the county magistrate court—

---

[1] In Deutsch's initial state court complaint, he requested compensation in the amount of $500, including the cost of the denied benefits for the bloodwork, the filing fee in state court, the cost of sending certified mail to AmeriBen during the administrative appeal process, and additional damages for "lost time." (ECF No. 1-1 at 4). Under ERISA, only the denied benefits and court costs/attorney's fees may be recovered. See 29 U.S.C. § 1132 (a)(1)(B), (g)(1).

simply stated that AmeriBen had failed to pay a claim for preventative care fully covered by Deutsch's health insurance plan, with no further details. (*See* ECF No. 1-1). In the interest of clarifying Deutsch's allegations for AmeriBen, the undersigned entered a memorandum opinion and order on September 11, 2023, denying AmeriBen's Motion for a More Definite Statement but directing Deutsch to file an amended complaint. (ECF No. 11). The undersigned also submitted proposed findings and recommendations, recommending that AmeriBen's Motion to Dismiss be granted in part, with respect to extracontractual damages, and denied in part, with respect to Deutsch's claim for denial of benefits under his ERISA-governed health plan. (ECF No. 12).

On September 19, 2023, Deutsch filed an amended complaint, supplementing his state court complaint. (ECF No. 13). Altogether, the state court complaint and amended complaint allege that on May 25, 2022, Deutsch had routine preventative bloodwork completed as part of a regular wellness visit at Cabell Huntington Hospital, an in-network laboratory. (ECF Nos. 1-1 at 7, 13 at 6). Prior to having the bloodwork completed, Deutsch reached out to customer support representatives to determine whether the bloodwork would be fully covered with no out-of-pocket costs. (ECF No. 13 at 6). Based on those conversations, both in an online chat forum and over the telephone, Deutsch believed that the bloodwork would be considered preventative and would be fully covered, and, in reliance on those representations, he had the bloodwork completed. (*Id.*). Deutsch states that he could have had the same bloodwork completed at another facility for $25, and he only used the in-network provider because, based on the representations by the customer service representatives (whom Deutsch labels as representatives of AmeriBen), he believed there would be no out-of-pocket cost to him.

(*Id.*). Only after Deutsch had the bloodwork completed did he learn it would not be fully covered. In March 2023, Deutsch received an Explanation of Benefits ("EOB") letter from AmeriBen related to his claim. (ECF No. 1-1 at 7). The EOB letter describes the bloodwork as "Preventive", but it shows that no co-insurance was applied to the bloodwork. (*Id.*). After provider discounts, Deutsch owed $309.59, to be applied towards his deductible. (*Id.*). In both Deutsch's first and second level appeals, AmeriBen stated that the bloodwork was not considered preventive because it did not fall under the United States Preventive Services Task Force ("USPSTF") age, gender, and medical condition recommendations. (ECF Nos. 1-1 at 18–19, 8 at 4–5). The record does not specify what tests were performed as part of Deutsch's bloodwork.[2] Deutsch's initial complaint and amended complaint allege alternative theories of liability: either 1) Deutsch's bloodwork was covered under the Plan's preventive care benefit, and AmeriBen wrongfully denied his claim, or 2) Deutsch reasonably relied on misrepresentations that the bloodwork was covered, and AmeriBen should be estopped from denying his claim for benefits.[3] (*See* ECF Nos. 1-1 at 4, 13 at 6).

AmeriBen attached a full copy of the Plan to its first Motion to Dismiss. (ECF No. 3-1). Deutsch was enrolled in a high deductible health plan, which provides that certain preventive care services are covered at 100% with no out-of-pocket cost when

---

[2] In one of his filings, Deutsch mentioned that the bloodwork included a complete blood count and comprehensive metabolic panel. (ECF No. 6 at 2). However, this was not stated in his initial state court complaint or amended complaint, meaning it cannot be considered in ruling on AmeriBen's renewed motion to dismiss. Additionally, the information may be incomplete, as Deutsch did not provide documentation of the bloodwork results.

[3] Deutsch's other filings also indicate that he intended to plead two alternate theories of liability. (See ECF No. 6 at 2) ("Defendant either breached their contract for health insurance or should be estopped from taking their current position due to the circumstances.).

performed by a network provider.[4] (ECF Nos. 1-1 at 19, 3-1 at 50). The Plan states, *inter alia,* in Section V, Schedule of Benefits, that "Preventive Care" will be 100% covered if it is (1) a service listed as A or B rated on the United States Preventive Services Task Force ("USPSTF") or (2) a service listed on the IRS Safe Harbor preventative services list.[5] (ECF No. 3-1 at 50). Under the same Preventive Care heading, there is also a section related to services ordered or performed for "Routine Wellness Care", which includes routine physical exams, related wellness labs and x-rays, and blood work, among other services. (ECF No. 3-1 at 50). The Plan document is unclear as to whether the Routine Wellness Care benefit is limited to those services included in the USPSTF list and the IRS Safe Harbor Services list. The Plan states, "[n]on-Preventive Care services which are ordered or performed at a Routine Wellness Care visit are not considered under the Preventive Care benefit," but does not explicitly indicate that preventive care performed or ordered at a routine wellness care visit is limited to the USPSTF A or B rated recommendations and the IRS Safe Harbor Services list. (*See* ECF No. 3-1 at 50).

The Plan includes links to several external websites for participants to consult, including links to the USPSTF website and IRS Safe Harbor Services list (ECF No. 3-1 at 50, 71). The link to the USPSTF website is nonfunctional, but the other links remain active, and a search of the USPSTF website appears to reveal a full list of the A and B rated recommendations.[6] The contents of both the USPSTF recommendations and IRS

---

[4] The Plan includes two high-deductible options: Classic and Value. (ECF No. 3-1 at 4). It is unknown which HDHP plan Deutsch was enrolled in, but the two options have identical descriptions of what qualifies as preventive care. (See id. at 50, 61).

[5] The Schedule of Benefits also references external guidelines for preventive care for children, but those guidelines are inapplicable to Deutsch.

Safe Harbor Services list are discussed in more detail below, but, in comparing the two resources, the IRS Safe Harbor Services list covers a broader range of preventive care.[7] When AmeriBen denied Deutsch's appeals, it explained that Deutsch's care was not considered preventive because it did not fall under the relevant USPSTF recommendations. (*See* ECF Nos. 1-1 at 18–19, 8 at 4–5). The appeal determination letters did not mention whether Deutsch's bloodwork was covered under the IRS Safe Harbor Services list, (*see id.*), even though the Plan incorporates *both* lists into its definition of preventive care. (*See* ECF No. 3-1 at 50).

Preventive Care is separately defined later in the Plan documents within Section VI, Medical Benefits, with a list of the types of services covered. (ECF No. 3-1 at 71). The list is explicitly stated to be non-exhaustive. (*Id.*). The list includes preventive labs and x-rays—defined as "mandated laboratory and x-ray services related to routine examinations." (*Id.*). The Plan does not specify by what or whom the labs and x-rays are "mandated." (*See id.*). The Plan states that additional preventive care, beyond the various listed services, shall be covered as required by applicable law if provided by a network provider, and the Plan provides links to both the USPSTF recommendations and the IRS Safe Harbor Services list. (*Id.*). In Section XXIV of the Plan, Defined Terms, there is an entry for Preventive Care which states that certain preventive services mandated under the Patient Protection and Affordable Care Act of 2010 are available without cost sharing when received from a network provider. That entry states the Plan will provide coverage for "evidence-based items or services rated A or B

---

[6]https://www.uspreventiveservicestaskforce.org/uspstf/topic_search_results?topic_status=All&grades%5B%5D=A&grades%5B%5D=B&searchterm=

[7] https://www.irs.gov/pub/irs-drop/n-04-23.pdf

in the [USPSTF] recommendations," certain immunization recommendations, and comprehensive guidelines for women and children supported by the Health Resources and Services Administration. (ECF No. 3-1 at 149).

AmeriBen filed a Renewed Motion to Dismiss and accompanying memorandum of law on October 3, 2023. (ECF Nos. 16, 17).  AmeriBen directs most of its arguments at Deutsch's assertions that he relied on representations made by customer support. AmeriBen argues that oral or informal written modifications to benefit plans are not recognized under ERISA, citing to the Fourth Circuit's decision in *HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*, 101 F.3d 1005 (4th Cir. 1996) and a decision from the District of Maryland, *Gross v. St. Agnes Health Care, Inc.*, No. ELH-12-2990, 2013 WL 4925374 (D. Md. Sept. 12, 2013). (ECF No. 17 at 5–6, 8–9). AmeriBen contends that, even if Deutsch were correct that he had been told that the bloodwork would be covered, any representations would have no effect on his coverage, because oral and informal written statements cannot modify the terms of the health plan. (*Id.* at 6). AmeriBen also clarifies the relationships between itself, the Plan, Deutsch's employer, and the customer support representatives to whom Deutsch spoke. (*Id.* at 6–7). Peraton is Deutsch's employer and the Plan Administrator. (ECF Nos. 17 at 7, 3-1 at 8, 10). AmeriBen is a Third-Party Administrator, also referred to in the Plan as the Claims Administrator. (ECF Nos. 17 at 7, 3-1 at 8). Accolade is an independent third-party contracted by Peraton to assist its employees. (ECF No. 17 at 7). The Plan refers to Accolade as the Medical Management Administrator, responsible for providing plan benefit information, among other services. (ECF No. 3-1 at 8). AmeriBen states that it does not contract with Accolade and that it did not in any way participate, review, approve, or oversee any of the communications between Deutsch and Accolade. (ECF

No. 17 at 7). Therefore, AmeriBen argues, it cannot be bound by any statements made to Deutsch by employees of Accolade regarding the coverage under the Plan. (ECF No. 17 at 7). AmeriBen also argues that Deutsch has failed to address the terms of his plan; Deutsch was given an explanation on multiple occasions that his routine wellness lab work did not fall under the USPSTF guidelines and therefore was not considered preventive under the plan, and Deutsch makes no factual allegations or argument that the services should be covered under the terms of the Plan. (*Id.*).

On October 10, 2023, Deutsch filed a response to the renewed motion to dismiss, accompanied by supporting authority. (ECF Nos. 19, 21). Deutsch argues that Accolade had apparent authority to act on behalf of AmeriBen, citing to state court decisions from West Virginia and New York. (ECF No. 21 at 2). He also cites two West Virginia state court decisions discussing the state common law doctrines of waiver and detrimental reliance. (*Id.*). Finally, Deutsch cites to 29 U.S.C. § 1133 and its related regulations; he states that 29 U.S.C. § 1133 requires a meaningful dialogue between plan administrators and beneficiaries, and he argues that AmeriBen violated this requirement by failing to convey to him that the bloodwork would not be covered before he had the bloodwork completed. (*Id.* at 1–2).

On October 30, 2023, AmeriBen filed a reply, arguing that Deutsch's response raised new causes of action not included in the amended complaint, that he failed to respond to key arguments from the renewed motion to dismiss, and that he misconstrued legal authority. (ECF No. 22 at 1).

## II.    <u>Standard of Review</u>

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that, to survive a 12(b)(6)

motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). In resolving the motion, the Court must assume that the facts alleged in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). The Court also considers any exhibits attached to the complaint and documents explicitly incorporated by reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 428 (4th Cir. 2022) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016)).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). However, while the Court "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore*

*Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Courts are required to liberally construe pro se complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  <u>Discussion</u>

### A. *Wrongful Denial of Benefits*

Deutsch's original state court complaint, which was incorporated into his amended complaint, (*see* ECF No. 13 at 6), asserted that he was denied preventive benefits owed to him under his health insurance Plan. (ECF No. 1-1 at 4). AmeriBen argues that Deutsch has failed to state a claim for denial of Plan benefits, because he has not explicitly identified the Plan provisions at issue. (ECF No. 17 at 7). Based on the facts before the Court, it remains plausible that Deutsch was wrongfully denied benefits owed to him under the terms of the Plan, and Deutsch has sufficiently stated a claim for denial of benefits, under 29 U.S.C. § 1132(a)(1)(B).

AmeriBen argues that Deutsch has failed to state a claim, because his complaint did not cite the specific plan provisions at issue. AmeriBen made the same argument previously in its first motion to dismiss, and the undersigned rejected those arguments in the first Proposed Findings and Recommendations. (ECF No. 12 at 11). While some

courts outside the Fourth Circuit have held that a plaintiff alleging wrongful denial of benefits must cite to a specific plan provision to survive a motion to dismiss under 12(b)(6), *see Vang v. Geil Enterprises Inc.,* No. 123CV00447ADASKO, 2023 WL 3168513, at *3 (E.D. Cal. Apr. 28, 2023); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 17-4599-BRM-LHG, 2018 WL 5630030, at *8 (D.N.J. Oct. 31, 2018), other courts have reached the opposite conclusion in some contexts, *see Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 728 (5th Cir. 2018), and the Fourth Circuit has yet to weigh in on what is necessary to state a claim for denial of benefits. *L.L. v. Medcost Benefit Servs.*, No. 1:21-CV-00265-MR, 2023 WL 362391, at *4 (W.D.N.C. Jan. 23, 2023), *reconsideration denied,* No. 1:21-CV-00265-MR, 2023 WL 4375663 (W.D.N.C. July 5, 2023). Deutsch's complaint at least broadly identified the relevant plan provisions, as he stated he was denied coverage for preventive care which should have been fully covered per his Plan. (ECF No. 1-1 at 4). A review of the Plan's preventive care provisions reveals several provisions under which Deutsch's bloodwork may be covered, as discussed below. Where there is no controlling authority and varied persuasive authority on the matter, Deutsch's complaint should not be dismissed for failing to identify the relevant plan provisions with greater specificity.

Deutsch alleges that he was denied preventive benefits owed to him under the Plan. A federal court presented with a claim for denial of benefits under an ERISA-governed healthcare plan must first determine the level of discretion afforded to the plan administrator in determining eligibility. *Gallagher v. Reliance Std. Life Insur. Co.*, 305 F.3d 264, 268 (4th Cir.2002). If the plan grants the administrator discretion, the court reviews the denial of benefits for an abuse of discretion—otherwise, review is

de novo. *Id.* In the instant case, the Plan explicitly grants the Plan Administrator this discretion, with the authority to delegate this discretion to a third party, (see ECF No. 3-1 at 8–9, 95), meaning that AmeriBen's decisions under the Plan are reviewed for an abuse of discretion. *See Turner v. Ret. & Ben. Plans Comm. Robert Bosch Corp.*, 585 F. Supp. 2d 692, 698 (D.S.C. 2007) ("Where a plan instrument reserves to the plan provider the ability to delegate discretion to a third party administrator, any decisions made by the administrator within the scope of properly delegated discretion is subject to the abuse of discretion standard of review.").

In determining whether the administrator's decision was reasonable under the abuse of discretion standard, a court considers the following factors: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342 (4th Cir. 2000). The court must look to the facts known the administrator at the time it made its decision. *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). To date, AmeriBen has provided the Court with no information that would permit a finding that it did not abuse its discretion; rather, AmeriBen has merely re-asserted the same blanket conclusion it provided to Deutsch in his first- and second-level appeals—that the bloodwork did not fall under the USPSTF guidelines. (*See* ECF

Nos. 17 at 7, 1-1 at 18–19, 8 at 4–5). Without knowing the information available to the administrator at the time it made its decision to deny benefits, it is impossible for a court to determine whether the denial was proper. *See Colburn v. Hickory Springs Mfg. Co.*, No. 5:19-CV-139-FL, 2020 WL 7129935, at *3 (E.D.N.C. Dec. 4, 2020) (denying plaintiff's motion for judgment on the pleadings in ERISA denial of benefits action where the court did not have access to the administrative record for the denial of benefits and appeal process). Based on the information presently available, it appears plausible that Deutsch's bloodwork *was* covered under the terms of his Plan, as discussed below. At the very least, AmeriBen has not satisfied its burden on a motion to dismiss.

There are several ways that Deutsch's bloodwork may be covered under the Plan. The clearest support for Deutsch's claim lies within the IRS Safe Harbor Services list. The IRS Safe Harbor Services list is one of two external lists of services explicitly incorporated within the Plan's Preventive Care benefit. The Plan states in the Schedule of Benefits section that Preventive Care includes services listed on the IRS Safe Harbor Services list, and the Plan's Medical Benefits section provides a link to the same list.[8] (ECF No. 3-1 at 50, 71). The IRS Safe Harbor Services list defines preventive care to include: 1) periodic health evaluations, including tests and diagnostic procedures

---

[8] Curiously, the Defined Terms section of the Plan, makes no reference to the IRS Safe Harbor Services list. (*See* ECF No. 3-1 at 149). However, this does not mean that the IRS Safe Harbor Services list is not part of the Preventive Care benefit. Although the Defined Terms section purports to define all terms used in the Plan, it appears the entry for Preventive Care is an incomplete description of the Preventive Care benefit. (*See id.*) For example, while both the Medical Benefits and Schedule of Benefits sections of the Plan make clear that annual physical examinations are covered under the Preventive Care benefit, (*see id.* at 50, 71), the Defined Terms entry for Preventive Care does not include annual physical examinations, either directly or indirectly. (See id. at 149). Rather than actually defining the complete Preventive Care benefit, the Defined Terms entry for Preventive Care seems to merely explain the Plan's compliance with the Patient Protection and Affordable Care Act. (*See id.*).

ordered in connection with routine examinations, such as annual physicals, 2) routine prenatal and well-child care, 3) child and adult immunizations, 4) tobacco cessation programs, 5) obesity weight-loss programs, and 6) screening services.[9] The list also states that preventive care generally does not include any services or benefit intended to treat an existing illness, injury, or condition. Because Deutsch's bloodwork was ordered in connection with an annual wellness examination, (*see* ECF Nos. 1-1 at 18, 6 at 2, 13 at 6), and was not intended to treat any existing illness, injury, or condition, it is plausible that the bloodwork would fall under the IRS's definition of preventive care—specifically, the first provision, regarding "tests and diagnostic procedures ordered in connection with routine examinations." The plain language of the IRS Safe Harbor Services list, incorporated by the plain language of the Plan, seems to support that Deutsch's bloodwork was covered preventive care, regardless of the specific tests performed.

If Deutsch's bloodwork is not covered under that first provision of the IRS Safe Harbor Services list, it is still at least plausible that Deutsch's bloodwork is covered under other provisions of the list, or other Plan provisions. To begin, Deutsch's bloodwork may be covered under the IRS Safe Harbor Services list's screening services, although it would depend on the specific tests run on Deutsch's blood, and of note, the record does not contain information detailing the specific blood tests performed. The screening services, which are listed in the appendix, feature screenings for many health conditions that would involve or might involve bloodwork, including screenings for various cancers, hemoglobinopathies, lipid disorders, Hepatitis B and C, HIV, anemia,

---

[9] https://www.irs.gov/pub/irs-drop/n-04-23.pdf

diabetes, thyroid disease, and other conditions.[10] Some of the screening services are expressly limited to certain subgroups, ("obesity in adults," "lead levels in childhood and pregnancy", "hearing impairment in older adults"), and others would implicitly only apply to children or pregnant persons, but most of the screening services are listed without any qualifications or restrictions. *Depending on the specific tests performed*, some or all Deutsch's bloodwork may fall under the screening services provision of the IRS Safe Harbor Services list.

The other external list of services incorporated into the Plan's Preventive Care benefit is the USPSTF recommendations. The USPSTF recommendations are referenced in the Plan's Schedule of Benefits, Medical Benefits, and Defined Terms sections. (ECF No. 3-1 at 50, 71, 149). The USPSTF recommendations cover a narrower range of services than the IRS Safe Harbor Services list. The USPSTF recommendations do not include a general definition of preventive care. Rather, the USPSTF recommendations merely consist of a variety of screening services, and it includes fewer screening services than the IRS Safe Harbor Services list. The Plan applies preventive care coverage to those USPSTF recommendations which are A and B rated. (ECF No. 3-1 at 50). While the USPSTF recommendations limit the frequency of screenings and are specific to a person's sex, age range, and pregnancy status, the Plan states that it "does not limit all federally mandated preventive care services to age/frequency/gender guidelines as outlined by the USPSTF." (*Id.*). The record before the Court does not elucidate what that means for the Plan's implementation of the recommendations—whether the age/frequency/gender guidelines simply do not apply,

---

[10] https://www.irs.gov/pub/irs-drop/n-04-23.pdf

or whether they only apply in some cases or to some services. Several USPSTF-recommended screenings requiring bloodwork may apply to Deutsch, depending on his age and medical history, including screenings for prediabetes/Type 2 diabetes[11] and various infectious diseases.[12] Because the USPSTF recommendations include so few screening services compared to the IRS Safe Harbor Services list, it is less likely that Deutsch's bloodwork would be covered under the recommendations, although it is still plausible. Moreover, it certainly is plausible that AmeriBen erroneously denied Deutsch's claim for benefits by failing to consider the IRS Safe Harbor Services list in its review of Deutsch's claim.

As noted previously, when AmeriBen denied Deutsch's appeals, its appeal determination letters referred to the USPSTF recommendations but did not state whether Deutsch's bloodwork fell within the IRS Safe Harbor Services list. (*See* ECF Nos. 1-1 at 18–19, 8 at 4–5). This raises real questions as to how AmeriBen interprets the Plan, whether AmeriBen failed to consult the IRS Safe Harbor Services list and, if not, why not. Both resources are explicitly incorporated into the Plan's Preventive Care benefit in its Schedule of Benefits and Medical Benefits sections. (ECF No. 3-1 at 50, 71). The appeal determination letters themselves even copied this text from the Plan's Schedule of Benefits, reaffirming that the IRS Safe Harbor Services list is incorporated into the Preventive Care benefit. (*See* ECF Nos. 1-1 at 18–19, 8 at 4–5). In order to

---

[11]https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/screening-for-prediabetes-and-type-2-diabetes

[12]https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/human-immunodeficiency-virus-hiv-infection-screening#fullrecommendationstart;
https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/hepatitis-c-screening;
https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/latent-tuberculosis-infection-screening#fullrecommendationstart

determine whether a service falls under the Preventive Care benefit, AmeriBen would have to consult both the USPSTF recommendations and the IRS Safe Harbor Services list, and a complete appeal determination letter should have referenced both in explaining why Deutsch's care was not covered. Because the IRS Safe Harbor Services list covers a significantly wider array of preventive care, it is entirely plausible that Deutsch's bloodwork did not fall under the USPSTF recommendations but did fall under the IRS Safe Harbor Services list, and that AmeriBen wrongly denied his claim by failing to refer to the IRS Safe Harbor Services list.

In addition to the IRS Safe Harbor Services list and USPSTF recommendations, which unambiguously cover certain kinds of bloodwork, there are several other broader, more ambiguous Plan provisions, which potentially cover Deutsch's bloodwork. As stated previously, it is unclear from the Plan documents whether Preventive Care is limited to the USPSTF Recommendations and IRS Safe Harbor Services list. (*See* ECF No. 3-1 at 50, 71). Assuming Preventive Care covers more than those two external resources, some provision of the Plan's varying definitions of Preventive Care may cover Deutsch's bloodwork. While the Medical Benefits section states that preventive care includes "mandated laboratory and x-ray services related to routine examinations", the Plan does not specify by what or whom the services are mandated. (*Id.* at 71). Depending on who or what mandates the services, Deutsch's bloodwork may be considered a mandated laboratory service. Second, the descriptions of Preventive Care are not completely identical between the Plan's Schedule of Benefits and Medical Benefits. The Routine Wellness Care benefit states that it covers labs and x-rays related to routine physical examinations, while the Medical Benefits section states that Preventive Care includes "mandated" preventive labs and x-rays. (*See id.* at

50, 71). Bloodwork and bone density testing are mentioned only within the Schedule of Benefits, and tobacco cessation is mentioned only under Medical Benefits. (*See id.*). Depending on how these various provisions are interpreted together and what blood tests were performed, Deutsch's bloodwork may be covered as part of the Routine Wellness Care benefit. Finally, in the Medical Benefits section of the Plan, the Preventive Care benefit list is non-exhaustive—it includes, *but is not limited to*, physical exams, mandated preventive labs and x-rays, and the USPSTF recommendations and IRS Safe Harbor Services list. (ECF No. 3-1 at 71). These ambiguities and discrepancies raise the possibility that Deutsch's bloodwork would be covered under one of these more general preventive care provisions, even if it were not covered under the IRS Safe Harbor Services list or USPSTF recommendations.

In sum, AmeriBen's motion to dismiss Deutsch's claim for wrongful denial of benefits must fail for two reasons: 1) AmeriBen has not provided the information necessary to decide a claim for wrongful denial of benefits—the same information which was available to the claims administrator at the time it made its decision—and such information would not be properly before the Court on a motion to dismiss, and 2) based on the limited information presented, it remains plausible that Deutsch's bloodwork was covered under some provision of the Plan. While the abuse of discretion standard is deferential, the Court cannot merely rely on AmeriBen's previous assertions in its appeal determination letters that the bloodwork was not covered. At this early stage of the litigation, AmeriBen has not provided the Court with the administrative record, as would be necessary to determine whether AmeriBen's decision was an abuse of discretion. That alone forecloses granting the motion to dismiss. Thus, given the present record, Deutsch's claims are at least plausible.

Accordingly, the undersigned **FINDS** that Deutsch has stated a plausible claim for relief for wrongful denial of benefits under ERISA, and AmeriBen's Renewed Motion to Dismiss should be denied o allow factual development of Deutsch's claim.

### B. Estoppel

Both Deutsch and AmeriBen have spent the most energy arguing about the conversations Deutsch had with Accolade employees that led Deutsch to believe his routine bloodwork would be covered with no out-of-pocket cost. (*See* ECF Nos. 13, 17). Though Deutsch did not expressly make an estoppel argument in his original state court complaint, (*see* ECF No. 1-1), he now clearly states it in his Amended Complaint: Deutsch argues that he relied on written and oral representations of the customer service employees that this routine preventive bloodwork would be fully covered, and fundamentals of fairness dictate that AmeriBen cover those costs as represented by Accolade employees. (ECF No. 13 at 6). AmeriBen maintains that, under ERISA, there can be no informal oral or written modification of the Plan, and therefore, any representations made to Deutsch by the Accolade employees would be void. Furthermore, AmeriBen argues that Accolade is a third party, and its representations cannot bind AmeriBen. (ECF No. 17 at 7).

Fourth Circuit precedent is clear that oral and informal written statements cannot modify the terms of an ERISA plan. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 59 (4th Cir. 1992); *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996). However, courts in other Circuits that follow this same rule have recognized an exception. Those courts have distinguished between outright modifications of an unambiguous plan provision, which are prohibited, and informal oral or written interpretations of an ambiguous provision,

which may provide grounds for a federal estoppel claim under ERISA. *See Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 588 (7th Cir. 2000); *Greany v. W. Farm Bureau Life Ins. Co.,* 973 F.2d 812, 821 (9th Cir. 1992); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285–86 (11th Cir. 1990); *James v. New York City Dist. Council of Carpenters' Benefits Funds*, 947 F. Supp. 622, 631 (E.D.N.Y. 1996). The Eleventh Circuit has ruled that estoppel is available only in "very narrow" circumstances, where the relevant plan provisions are ambiguous and the plan provider or administrator has made oral representations to the plaintiff that constitute an informal interpretation of the ambiguity. *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 852 (11th Cir. 2013). The Ninth Circuit adopted a similar rule: a plaintiff must allege that there was a material misrepresentation, reasonable and detrimental reliance on the representation, that the plan provision was ambiguous, that representations involved an interpretation of the plan, and that extraordinary circumstances exist to warrant relief. *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1261 (9th Cir. 1997). The Fourth Circuit's decision in *HealthSouth Rehab. Hosp.*, cited by AmeriBen, states that ERISA does not permit informal modifications to benefit plans, but the decision is silent as to whether there may be some exception for informal *interpretations* of ambiguous provisions. 101 F.3d 1005, 1009 (4th Cir. 1996). When presented with cases posing the question of whether ERISA permits equitable estoppel for interpretations of ambiguous provisions, the Fourth Circuit has declined to address the issue. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 59 (4th Cir. 1992), *as amended* (July 17, 1992). Various district courts within the Fourth Circuit have read *Coleman* as leaving open the possibility that ERISA permits estoppel claims for interpretations of ambiguous plan provisions. *See Phillips v. Brink's Co.*, 632 F. Supp. 2d 563, 572 (W.D. Va. 2009);

*Fetter v. UNUM Life Ins. Co. of Am.,* No. CIVA 2:05-2200 DCN, 2006 WL 2303184, at
*3 (D.S.C. Aug. 8, 2006). Whether Deutsch could succeed on a theory of estoppel would
ultimately depend on facts not presently before the Court, but AmeriBen's contention
that estoppel is categorically unavailable in ERISA actions is conjectural.

AmeriBen also argues that it cannot be bound by the representations of the
customer service representatives that engaged with Deutsch, because those
representatives were employees of Accolade, a third party. (ECF No. 17 at 6). AmeriBen
states that Accolade is not a subsidiary, agent, or otherwise affiliated with AmeriBen
and does not act on behalf of AmeriBen. (*Id.*). In AmeriBen's view, because it does not
contract with Accolade and did not in any way participate in, review, approve, or
oversee the communications between Deutsch and Accolade employees, AmeriBen
cannot be bound by those communications. (*Id.* at 7).

The Plan lists AmeriBen as the Claims Administrator, also known as the Third
Party Administrator, while Accolade is listed as the Medical Management
Administrator. (ECF No. 3-1 at 8, 11). AmeriBen handles post-service claims and the
first and second-level appeals for post-service claims, while Accolade provides plan
benefit information, among other responsibilities. (*Id.* at 8, 104). When Plan
participants, like Deutsch, seek to learn whether a particular service from a provider is
covered, they are directed to contact Accolade. (*See* ECF Nos. 3-1 at 21, 17 at 6–7). Once
they receive care, a claim is submitted to AmeriBen, and AmeriBen will send the Plan
participant an Explanation of Benefits letter, showing the amount owed after the claim
has been processed. (*See* ECF No. 3-1 at 26, 104). Benefits are paid directly from the
Plan through AmeriBen. (*Id.* at 129).

While AmeriBen maintains that it is a separate entity from Accolade and has no

responsibility for the actions of Accolade, the Plan documents suggest a greater connection between the two parties. The Plan effectively states that AmeriBen provides benefit information *through* Accolade: "The Third Party Administrator, either through its price comparison tool on member.accolade.com or through Member Services at the phone number on the back of your ID card, will allow you to get [] cost sharing information that you would be responsible for, for a service from a specific network provider." (ECF No. 3-1 at 21). This suggests that AmeriBen would in fact be responsible for the representations of Accolade employees. Furthermore, if, as AmeriBen argues, it cannot be bound by the representations of Accolade employees, that raises additional questions of what, if any, entity *would* be bound and whether Accolade's representations have any legal effect.[13] AmeriBen's argument that it is not bound by Accolade's representations is not sufficiently convincing to warrant dismissal of Deutsch's estoppel theory, at least at this stage. Accordingly, the undersigned **FINDS** that Deutsch has plausibly stated a claim for estoppel under ERISA, and AmeriBen's motion to dismiss should be denied.

Related to the issue of estoppel, AmeriBen argues that Deutsch's reply to the renewed motion to dismiss raises new claims not included in his complaint. (ECF No. 22 at 2). AmeriBen argues that Deutsch's reply alleges detrimental reliance, waiver,

---

[13] If statements by Accolade representatives are not binding coverage determinations, that may amount to a breach of fiduciary duty by Peraton, the Plan Administrator. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (vacating district court's grant of summary judgment with respect to breach of fiduciary duty and finding that claims administrator may have breached its fiduciary duty to plaintiff by encouraging plan participants to call customer service line with questions about coverage but failing to warn participants that those phone calls were not binding determinations and failing to inform plan participants where they could obtain binding determinations as to whether services would be covered). If, and why, Peraton would direct its Plan participants to contact Accolade with questions about their insurance coverage if Accolade's statements were not binding coverage determinations are unresolved factual issues. Additionally, the relationships of these entities to each other and their responsibilities under the Plan are undeveloped factual issues which cannot be resolved by the Court on a motion to dismiss.

and estoppel for the first time, and that Deutsch supports these claims by referencing the doctrine of apparent authority for the first time, which AmeriBen argues is irrelevant. (*Id.*). AmeriBen is incorrect to state that Deutsch has raised an estoppel claim for the first time in his reply. Although Deutsch did not use the estoppel label in his amended complaint, he clearly stated the elements of an estoppel claim—that he reasonably relied on misrepresentations made by AmeriBen, to his detriment. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, No. CIV. A. S 92-1156, 1993 WL 733870, at *5 (D. Md. Aug. 20, 1993), *aff'd*, 32 F.3d 120 (4th Cir. 1994) (quoting *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 59 (1984) for the elements of estoppel). While Deutsch's reply could be read as raising new and separate claims related to waiver and 29 U.S.C. § 1133, it seems Deutsch simply made a clumsy attempt at providing support for the arguments already put forth in his complaint— estoppel and wrongful denial of benefits. (*See* ECF No. 22 at 2–3).

## IV.     Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that AmeriBen's Renewed Motion to Dismiss, (ECF No. 16), be **DENIED**. This "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the

"Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**:  December 7, 2023

Cheryl A. Eifert
United States Magistrate Judge